## Case No. 10,012.

### The NAPOLEON.

[Blatchf. Pr. Cas. 296.] [1]

District Court, S. D. New York. Dec., 1862.

PRIZE—PRACTICE—WHAT ISSUES ALLOWED—COLLATERAL SUBJECTS—OWNERSHIP—USE BY BELLIGERENTS.

1. A claim and answer in a prize suit cannot put in issue anything but the question of prize or no prize.

2. Collateral subjects can be controverted in prize cases only by means of pleadings and further proofs, specially authorized by the court after a decision on the first issue.

3. The vessel had, up to the time of her capture in enemy waters, been employed by the enemy for purposes connected with the operations of war and was found with the enemy's flag and the enemy's artillery on board. She was captured by the United States naval squadron, acting in co-operations with the land forces, in the attack upon Newbern. Her owner, though he was a loyal citizen of a loyal state, had left her in charge of an agent, who allowed her to be so employed, and it did not appear that she was taken by the enemy by duress or in fraud of her owner's right. Under such circumstances her owner is concluded from denying her hostile character.

4. No equity of lien or claim, however urgent, held by innocent third parties, is allowed to prevail, in a prize court, against property seized while in use by a belligerent.

5. Vessel condemned.

In admiralty.

BETTS, District Judge. The vessel proceeded against in this case was captured by the United States naval squadron, acting in co-operation with the land forces, in the attack on and seizure of Newbern, North Carolina, in March last. The vessel was totally abandoned, when taken possession of by the United States armed vessels. The evidence is, from reports prevalent at the time and place, that armed troops in the rebel service had been stationed on board of her until driven out by the close approach of the United States forces, and then left her without any crew, papers, or equipment, other than several pieces of artillery which were found on board, and were placed on shore by orders of the commandant of the United States squadron, and that the vessel was afterwards laden with rosin and other stores, and ordered to this port for adjudication. A libel was filed June 3, 1862, demanding the condemnation of the vessel. A claim and answer thereto, in the name of D. C. Murray, a citizen of and resident in the United States, was put in on the 27th of June thereafter, upon which two defences are raised: First, that the libel is indefinite in its charges and allegations, and, therefore, insufficient to found a conviction upon; and, secondly, that the averments in the answer present an adequate bar and defence to the suit, and, if not evidence of themselves, are entitled to be supported by proofs aliunde on the part of the claimant.

[1] [Reported by Samuel Blatchford, Esq.]

The rule of practice in prize suits upon these points is as fully settled in law, in this court, as it lies within the competency of the court to determine. The libel has all the fulness and particularity of statement demanded in prize suits, and the claimant cannot bring any other issue in contestation, by an answer to the libel, than the question of prize or no prize. 2 Wheat. [15 U. S.] note Append. 19; The Empress [Case No. 4,476]; The Delta [Id. 3,777]; and other cases in this court. Collateral subjects can be controverted in prize cases only by means of pleadings and further proofs, specially authorized by the court after a decision on the first issue. There having been a hostile seizure of the vessel, her tackle and equipments, in enemy waters, by a United States squadron co-operating with land forces in an attack upon Newbern, and in the capture of that place, she must be regarded as lawful prize, unless some fact showing her legal exemption from seizure be established, or be necessarily implied from the circumstances of the capture. If the fact be conceded that the Napoleon was bona fide the property of the claimant, and that he was loyally opposed to her being employed or held by the enemy, that would not relieve her from liability to condemnation in a prize court, unless she was taken out of the possession of her rightful owner, and held in use by the enemy by duress, or at least in fraud of his right. The true title may be in the claimant, but, as it came to him through the enemy holder, the law will presume that such retaining of possession by the vendor was by the consent or permission of the purchaser. It is not necessary that the vessel should be placed in the control of her possession with a view to her being employed in any warlike acts or in the commission of a wrong against others, but whether she was chartered or loaned, or how otherwise she was allowed to be employed by the subjects of a nation at war, prize courts will treat her as enemy property, equally as if full ownership of her had vested in the enemy. The external symbol of her employment by the enemy or his officers, for purposes immediately or mediately connected with the operations of war, concludes her real owner from denying her hostile character. The Carolina, 4 C. Rob. Adm. 256; The Orozembo, 6 C. Rob. Adm. 433; 3 Phil. Int. Law, § 272; Halleck, Int. Law. 641.

This vessel was, at the time of her capture, clothed with symbols of hostility. She was riding in enemy waters, had been occupied by enemy troops to the time of her seizure, and had on board the enemy's flag and a heavy armament of artillery. I think, also, that the reports of residents in the port, that she had been, previous to her seizure, used in running the blockade of that port, and had been also fitted out as a privateer, are legitimate evidence of her antecedent course of employment, although all these acts were with-

out the sanction of and violently in opposition to the wishes of the claimant, who is personally a loyal citizen, of high character and integrity, and a resident merchant of this city, opposed strenuously to the Rebellion, and has been deeply injured pecuniarily by the misuse of his property on this occasion and otherwise; yet the acts of his agent, with whom the vessel was left by him, determine the character of the vessel, and the integrity of her real owner cannot secure her from the consequences of her illicit employment. The claimant must appeal to his government for relief from the forfeiture. The court is not empowered by the existing laws to adjudge the case upon principles of fair and reasonable equity, but must adhere to and apply the severe edicts of prize law. It is understood that congress may, at its present session, make provision for the protection of the property of loyal residents of the North which may be in the hands of the rebels, and subject to forfeiture for its criminal use by them. That is a matter to be controlled at the discretion of the legislature. The courts cannot, in time of war, depart from the strict behests of the law, by shielding property from the effects of a hostile character impressed upon it by the culpable conduct of those who are intrusted with it, or who so hold it that it can be turned to the aid of the enemy, or to a hostile use against our own government. No equity of lien or claim, however urgent, held by innocent third parties, is allowed to prevail in a prize court against property seized while in use by a belligerent. 1 Kent. Comm. 87. A decree of condemnation and forfeiture of the vessel, her tackle, &c., will be entered.

An appeal from this decree was taken to the circuit court. Subsequently the secretary of the treasury released seven-eighths of the vessel to the claimant, and the appeal as to the rest was abandoned.

[There was a rehearing allowed in this case, but the decree of forfeiture was allowed to stand. Case No. 10.013.]